IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED

98 MAY 20 AM 10: 58

U.S. DISTRICT COURT
N.D. OF ALABAMA

LUCRETIA DAWN CASE,                 )

    PLAINTIFF,                    )

VS.                                 )         CV97-H-0749-E

TALLADEGA CITY SCHOOL SYSTEM;       )
and CHARLES KEARLEY,
individually,                       )

    DEFENDANTS.                   )

ENTERED

MAY 2 0 1998

## MEMORANDUM OF DECISION

On March 16, 1998 plaintiff filed a motion for partial

summary judgment[1] and then defendants filed their own motion for

summary judgment on March 18, 1998. The motions for summary

judgment were deemed submitted, without oral argument, to the

court for decision as of April 9, 1998.[2] See Orders dated March

---

[1] Plaintiff originally filed a motion for partial summary
judgment on March 10, 1998, but amended the motion on March 16,
1998 and the court ruled the original motion moot by its March
17, 1998 order. Plaintiff's motion seeks summary judgment in her
favor as to all claims, except the retaliation claim.

[2] Plaintiff filed a speaking motion on March 16, 1998 and
evidence in support of her motion for summary judgment on March
10, 1998 (along with the original motion)which included: excerpts
from the depositions of plaintiff, Charles Kearley, Ken Shirley,
Bonnie Miller, Rita Nabors, Eddie Tucker, Jane Bates, Elaine
Harris, Sue Gallahar, and Ken Turner; various correspondence; a
copy of the job vacancy posting for the Supervisor of Maintenance
and Transportation; plaintiff's EEOC Charge; and Shirley's
Employment Contract. Plaintiff supplemented this evidence by
filing W-2 statements for plaintiff and Patterson on March 16,
1998 and a Statement by Henry Ashley on April 13, 1998. See
Notices of Filing dated March 16, 1998 and April 13, 1998.
Additionally, plaintiff filed a brief opposing defendants' motion
for summary judgment on April 10, 1998.

Defendants filed evidence in support of the motion for
summary judgment on March 18, 1998, including: minutes from the
July 1, 1997 Board of Education meeting and an enclosure provided

34

12, 17 and 19, 1998.

Plaintiff commenced this action by filing a complaint on
March 27, 1997 alleging that defendant Talladega City School
System (the "School System") discriminated against plaintiff
based on her sex in relation to a promotion and her pay in
violation of the Equal Pay Act (Count II), Title VII of the Civil
Rights Act, 42 U.S.C. § 2000e et seq. (Count I) and 42 U.S.C. §
1983 (Count IV).  Additionally, in Count III plaintiff arguably
asserts[3] that the School System retaliated against her for
complaining about this discriminatory conduct.  Plaintiff also
alleges that defendant Charles Kearley discriminated against her
based on her sex in violation of § 1983 (Count IV).  Defendants
filed an answer denying plaintiff's allegations on April 29,
1997.

## I.    FACTUAL BACKGROUND

The following facts are undisputed:  Plaintiff was employed
by the School System as the Maintenance and Transportation

---

to Board Members; an Affidavit of Kearley; job descriptions;
various correspondence; and excerpts from the depositions of
plaintiff, Shirley, Kearley, and Miller.  On April 2, 1998,
defendants submitted evidence in opposition to plaintiff's motion
which included the EEOC file and a second affidavit by Kearley.

[3]   The court is charitable in even suggesting that Count III
asserts a claim for retaliation.  The word "retaliation" does
appear in the caption for Count III but neither the word
"retaliation" nor any synonym for it appears in the body of Count
III.  Had a Rule 12(b)(6) motion been filed seeking to dismiss
Count III, it should have been granted.  Further, as discussed in
footnote 23, infra, plaintiff really does not know what type of
retaliation claim she "thought" she was including in Count III.

2

Secretary from August 17, 1985 until August of 1996. Once named
as the Assistant to the Maintenance and Transportation Supervisor
in August of 1996, she remained in that position until November
30, 1997. From the beginning of her employment with the School
System until November 21, 1995 Joe Patterson served as
plaintiff's immediate supervisor in his capacity as
Transportation Supervisor. Patterson died on November 21, 1995.
Plaintiff advised Kearley, Superintendent for the School System[4],
by a letter dated November 27, 1995 that she wished to be
considered for the position of Transportation Supervisor. See
Ex. 3 of Plaintiff's Submission ("Sub."). Patterson had written
a letter dated December 10, 1992 recommending plaintiff to
replace him as Transportation Supervisor and stating that the
School System "would be making a grave mistake not giving her
this job." See Ex. 4 of Plaintiff's Sub.

The duties of the Transportation Supervisor included:
training and evaluating drivers; disciplining drivers; creating
and changing routes; daily inspections of bus fleet; keeping the
superintendent and principal apprised of all personnel problems
and discipline problems; maintaining the daily work schedules;
overseeing all energy systems; keeping a log of bus repairs,
costs and usage; conducting in-service programs; apprising the
Superintendent of needs; supervising those in the department and

---

[4] Kearley served as Superintendent of the Talladega City
School System from June 1, 1993 until June 30, 1997, which
includes all dates relevant to this action. See Kearley
Affidavit (Ex. 4 of Defendants' Sub.).

3

other duties assigned by the Superintendent. See Ex.9 to Plaintiff's Sub; Case depo. 23-24 (Ex. 5 of Plaintiff's Sub.), Shirley depo. 19-26.

Following Patterson's death, Kearley appointed Ken Shirley to serve as the Interim Transportation Supervisor, in addition to his ongoing position as Maintenance Supervisor. See Shirley depo. 24; Ex. 7 of Plaintiff's Sub. Shirley began working for the School System on August 1, 1984, as a maintenance worker. See Shirley depo. 7-8. After four or five months of employment with the School System, he was appointed Maintenance Supervisor. Id. As Maintenance Supervisor, Shirley performed maintenance-related duties on boilers, air conditioners and other projects, ensured that the football stadium and school auditoriums were cleaned and supervised six maintenance workers. Id. at 8-9. Prior to his appointment as Interim Transportation Supervisor on November 27, 1995, Shirley had no responsibilities for the Transportation Department and had performed none of the duties assigned to the Transportation Supervisor. See Shirley depo. at 13; Case depo. at 67 (Ex. 1 of Defendants' Sub.).

Around December 13, 1995 the state inspector came to inspect the School System's buses. See Case depo. at 67-68 (Ex. 1 of Defendants' Sub.; Ex. 8 of Defendants' Sub. The state inspector immediately grounded three or four buses and called the state department. Id. at 68. After conferring with Shirley, plaintiff called some mechanics who worked for the Talladega County School System and found some mechanics willing to work on the buses

4

during the Christmas holidays in order to restore them to the appropriate condition. Id.  Shirley worked along with mechanics to bring the bus fleet into compliance with state guidelines.[5] See Case depo. 66-70 (Ex. 1 of Defendants' Sub.); Ex. 8 of Defendants' Sub.

Kearley recommended to the Talladega City Board of Education (the "Board") that the positions of Transportation Supervisor and Maintenance Supervisor be combined.[6]  See Kearley depo. 22-23. The Board approved the combining of the positions[7] and instructed Kearley to interview potential candidates and bring a recommendation to them at the next Board meeting. Id. at 26. The announcement of the vacancy for Supervisor of Maintenance and Transportation was drafted and posted by Kearley on May 27, 1996. Id. at 26-27; Ex.11 to Plaintiff's Sub.  On June 6, 1996 plaintiff applied for the job of Supervisor of Maintenance and Transportation.  See Ex. 12 of Plaintiff's Sub.

---

[5]  Plaintiff disputes the degree of Shirley's involvement in working to bring the buses grounded into compliance with state requirements.  She submitted a statement by Henry Ashley in which Ashley said that Shirley did not do any "hands on" work on any of the buses but simply came in once or twice to see what was going on and run and get a part.  See Ashley Statement.  Shirley testified that he worked every day during the two-week Christmas vacation, including four hours on Christmas day, while plaintiff was in and out.  See Shirley depo. 68-69.

[6]  Prior to 1984 the Maintenance and Transportation Departments had a shared supervisor.  See Case depo. at 41-42 (Ex.1 of Defendants' Sub.).

[7]  Board Member Bonnie Miller testified that she opposed grouping the departments because she thought the two departments needed to be separate in order to run more efficiently and effectively.  See Miller depo. at 14.

5

Kearley recommended Shirley to the Board as the best candidate for the position of Supervisor of Maintenance and Transportation. See Miller depo. 36-38. Only three Board members accepted the recommendation, with Bonnie Miller opposing the idea of combining the two positions. Id. at 14,32, 36-38. In a document prepared by Kearley for the Board, Kearley stated that he felt "that Mr. Shirley's background gives him a better understanding of the total departmental operations." See Ex.6 to Defendants' Sub.

On July 1, 1996, the Board approved Shirley for the position of Supervisor of Maintenance and Transportation, with an effective date of January 3, 1996. See Ex. 15 of Plaintiff's Sub.; Ex.2 of Defendants' Sub. Shirley's salary was increased from $31,000 (his pay as Maintenance Supervisor) to $36,856.49.[8] See Exs. 15, 16 and 25 of Plaintiff's Sub.; Shirley depo. at 45. The Board also voted on July 1, 1996, to approve a job description for "Assistant to the Supervisor of Maintenance and Transportation" and authorized the Superintendent to post the position to be filled as soon as possible.[9] See Ex.2 of

---

[8] When Patterson served as Supervisor of Transportation he earned approximately $31,000 annually. See Ex. 25 of Plaintiff's Sub.

[9] At the same time Kearley recommended that the Board combine the supervisory positions for the Maintenance and Transportation Departments, he also recommended the creation of a position entitled "Assistant to the Supervisor of Maintenance and Transportation." See Kearley depo. at 23.

In a letter to Kearley dated June 21, 1995 plaintiff asked Kearley and the Board to change her title to Assistant with a pay raise based on her involvement with certain areas and her experience. See Ex.13 of Plaintiff's Sub. Kearley responded by

6

Plaintiff's Sub. In August of 1996 plaintiff was named as the Assistant to Shirley. <u>See</u> Complaint. During 1995 plaintiff received an annual salary of $22,500.00. <u>See</u> Ex.26 of Plaintiff's Sub. There is no evidence before the court as to the exact salary figure for plaintiff's salary in 1996 and 1997. Plaintiff's February 8, 1996 letter states that at one point the drafted job proposal would mean a $330.00 increase monthly to plaintiff's prior pay ($22,500.00), thus increasing her annual pay by $3,960 to $26,460.00. <u>See</u> Ex. 11 of Defendants' Sub.

Both prior to and following Patterson's death on November 21, 1995 plaintiff trained the bus drivers, gave instruction to the drivers on routes to drive, coordinated the schedules for the buses, disciplining drivers and dealt with discipline problems involving students. <u>See</u> Harris depo. 9-12, 14-15, 19. After Shirley was appointed Interim Supervisor the bus drivers continued to consult with plaintiff regarding the day-to-day operation of the Transportation Department. <u>Id.</u> 14-15. At the time Shirley was appointed Interim Transportation Supervisor plaintiff held a commercial driver's license ("CDL"), but Shirley

---

a letter dated June 29, 1995, stating that in his opinion the School System did not need an assistant transportation supervisor and that as a secretary plaintiff should not be responsible for routing, scheduling, training or other supervisory duties. <u>See</u> Ex. 14 of Plaintiff's Sub. Kearley stated that he would discuss plaintiff's responsibilities with Patterson "to be sure that [she][was] not outside [her] job description as secretary." <u>Id.</u> According to Kearley he directed Patterson not to assign plaintiff to perform any supervisory duties at that time. <u>See</u> Kearley depo. at 76.

Shirley had no CDL.[10]  In January of 1996, Kearley authorized
plaintiff to perform driver certification training.  See Ex.10 to
Plaintiff's Sub.

On February 8, 1996, plaintiff wrote a letter to Kearley and
the members of the Board stating that at that time she felt "that
the maintenance and transportation departments can be ran [sic]
by one supervisor and one assistant."  See Ex. 11 of Defendants'
Sub.  Plaintiff stated that she and Shirley have a good working
relationship and she felt they could compliment one another.  Id.
Because Shirley's strength and focus centered on improving bus
maintenance, while plaintiff's strength and focus involves her
knowledge of laws, necessary reports, routing and training of
drivers, plaintiff requested that the maintenance and
transportation departments "reflect a new respectability and
accountability to it."  Id.

In the February 8, 1996 letter plaintiff appears willing to
accept the position of Assistant, provided that she receives an
additional pay increase of $170 per month above that recommended
in the job proposal for the assistant position.[11]  Id.  Plaintiff

_____

[10]  Plaintiff asserts that the Transportation Supervisor is
required to hold a CDL.  See Plaintiff's Motion for Summary
Judgment at ¶ 12; Case depo. at 34 (Ex.1 of Plaintiff's Sub).
Kearley testified that he was not aware of any requirement that
the person supervising the Transportation Department have a CDL.
See Kearley depo. at 41.  Yet, Kearley admitted during his
deposition that once Shirley was approved as the Supervisor of
Maintenance and Transportation he was told by Kearley "he would
have to obtain a CDL license."  Id. at 80.

[11]  According to plaintiff's February 8, 1996 letter Kearley
had provided plaintiff with a copy of a job proposal for the
Assistant position prior to the Board's consideration and

expressed a willingness to work as the Assistant to Shirley.  Id.
She added that as a department "we need to get this matter behind
us so that we may be able to go on with other matters."  Id.

However, by a letter dated May 14, 1996, plaintiff appeared
to change her mind about the opinions she expressed in her
February 8, 1996 letter.  See Ex. 15 of Defendants' Sub.  In the
May letter plaintiff states that she no longer believes that the
Maintenance and Transportation Departments can be effectively run
by one supervisor, Ken Shirley, and an Assistant.  Id.  Based on
the duties that plaintiff has continued to perform[12], plaintiff
states that she was being required to perform as the Supervisor
of the Transportation Department, even though Shirley had been
named Interim Transportation Supervisor.  Id.  Plaintiff
identifies her May 14, 1996 letter as notice to the Board and
Kearley that she is "again interested in the supervisory
position."  Id.

On or about May 30, 1996, plaintiff's counsel wrote a letter
to Board members expressing that in his opinion and the opinion
of others, the new job proposal for the combined job of

_____

approval of the position on July 1, 1996.  See Ex. 15 of
Defendants' Sub.

[12]   Plaintiff listed these duties as including: training new
drivers, running the daily operation of field-trips, routes,
completing monthly and state reports, attending the Alabama State
Transportation Conference, attending the National Conference on
Transporting Students with Disabilities in March, completing
departmental payroll for all maintenance and transportation
personnel, assigning field trips to individual drivers and
finding substitutes for custodial staff and drivers.  See Ex. 15
of Defendants' Sub.

9

Supervisor of Transportation and Maintenance was written to favor Shirley and to prevent plaintiff from qualifying. See Ex. 12 of Defendants' Sub. According to the letter plaintiff sought compensation for the eight previous months that plaintiff purportedly served as the "effective" Supervisor of Transportation. Id. Additionally, plaintiff's counsel sought to have the Board reconsider its decision to combine the departments and then to appoint plaintiff as Supervisor of Transportation on a permanent basis. Id. Plaintiff filed a charge of sex discrimination against defendants with the EEOC on June 10, 1996. See Plaintiff's Notice Supplementing Complaint.

## II.   LEGAL ANALYSIS

### A.   Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the

10

moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the

11

burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary

12

deficiency.   However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.   Lewis v. Casey, _____ U.S. ____, 116 S. Ct. 2175 (1996).

## B.   Analysis of Plaintiff's Title VII and § 1983 Claims

Based on the allegations in the complaint, plaintiff asserts that the School System violated Title VII[13] and discriminated against her based on her sex by combining the jobs of Maintenance Supervisor and Transportation Supervisor in a way that favored a male, Shirley, and disfavored plaintiff; failing to promote her to this supervisory position; and failing to pay her at a rate "commensurate with" the supervisory position she occupied de facto based on her jobs duties and responsibilities.   Plaintiff adopts these same allegations as the basis for her § 1983 claim against defendants Kearley and the School System.   Based on the stage of the proceedings, the arguments on the merits of this case already before the court at this time, and the court's decisions with regard to the merits, the court will not address Kearley's assertion of qualified immunity.[14]

_____

[13]   Defendant Kearley properly argues that plaintiff cannot bring a Title VII claim against Kearley as an individual.   Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991).   Based on plaintiff's prayer for relief under Count I of the Complaint, plaintiff does not appear to be asserting any Title VII claim against Kearley, individually.   Had plaintiff's complaint asserted any Title VII claim against Kearley, individually, the motion for summary judgment would be granted in Kearley's favor.

[14]   The court's decision of declining to address the qualified immunity defense by Kearley should not be construed as

13

1.   **The School System's § 1983 Liability Under Monnell**

In relation to plaintiff's § 1983 claim against the School System, plaintiff must assert that an official policy or custom caused the violation of plaintiff's constitutional rights. Monell v. New York City Dept. Of Social Services, 436 U.S. 658, 690-92 (1978). Because there is no respondeat superior liability under § 1983, the School System's liability cannot be premised solely upon Kearley's actions unless he was the delegated final policy maker in that area or the Board has failed to exercise an affirmative duty to the level to constitute deliberate indifference. Monell, 436 U.S. at 691-93; Pembauer v. City of Cincinnati, 475 U.S. 469, 482-83 (1986); Floyd v. Waiters, 133 F.3d 786, 793 (11th Cir. 1998); Taylor v. Ledbetter, 818 F.2d 791, 794 (11th Cir. 1987).

Due to the requirement that Kearley obtain approval by the Board, it is clear that he is not the final policy maker in relation to: (1) the combining of the supervisory positions in the maintenance and transportation departments; (2) the selection process and promotion of Shirley to the newly formed position; and (3) the salaries set for Patterson's position, plaintiff's position and those positions occupied by Shirley. The simple fact that the School System's Board accepted and approved Kearley's recommendation does not render the approval of his recommendations a discriminatory policy or custom. Plaintiff has failed to allege or present sufficient evidence to show that the

---

any determination of its viability.

14

School System made the decisions in question pursuant to any
official policy or custom to discriminate against plaintiff based
on her sex.  Therefore, the School System is entitled to judgment
as a matter of law on plaintiff's § 1983 claims.

>      2.    **Analysis of the Title VII Claim(Against the
>            School System) and the § 1983 Discriminatory
>            Promotion Claim (Against Kearley)[15] Under the
>            McDonnell Douglas Burden Shifting Framework.**

Where a plaintiff's discrimination claim[16] is based on
circumstantial evidence, the court employs the shifting-burden
framework established in McDonnell Douglas Corp. v. Green, 411
U.S. 792 (1973).  First, the plaintiff has the burden of
establishing a prima facie case of discrimination.[17]  Defendants

---

[15]    Because plaintiff asserts the same evidence to support
her § 1983 claim against both Kearley and the School System, the
same rationale used in analyzing plaintiff's § 1983 claim against
Kearley would serve as an alterative basis for granting summary
judgment in favor of the School System on the § 1983 claim.

[16]    Analysis under the McDonnell Douglas framework is
appropriate for both Title VII and § 1983 claims.  Busby v. City
of Orlando, 931 F.2d 764, 777 (11th Cir. 1991).  Plaintiff has
presented no direct evidence of discrimination nor statistical
data to support her discrimination claims.  Statement by current
and former employees of the School System that they "felt" or
"believed" that plaintiff was not promoted due to her sex does
not qualify as direct evidence of discrimination.  The term
"direct evidence" relates to actions or statements by an employer
reflecting a discriminatory or retaliatory attitude correlating
with the discrimination or retaliation complained of by the
employee, without inference or presumption.  Carter v. Three
Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir.
1998).

[17]    In order to present a prima facie case of
discrimination, plaintiff must show:  (1) that she belongs to a
protected class; (2) that she applied and was qualified for a
promotion for which the employer was seeking applicants; (3) that
she was rejected; and (4) that, other equally or less qualified

15

argue that plaintiff has failed to present the necessary evidence to make out a prima facie case. In particular, defendants assert that plaintiff has failed to show that Shirley was equally qualified as plaintiff or less qualified than plaintiff for the position of Maintenance and Transportation Supervisor.

Plaintiff states that she was "more qualified for the position"[18] because she had been successfully performing the supervisory duties that were in Patterson's job description as Transportation Supervisor for some time. See Case depo. at 30 (Ex. 1 of Plaintiff's Sub.). Plaintiff also states that Kearley was aware that Shirley "had problems" being the Supervisor of Maintenance. Id. According to plaintiff, Board Member Bonnie Miller told plaintiff that Miller "was not going to go along [with Kearley's recommendation], that Ken Shirley was not qualified" because he was not familiar with the laws, held no CDL (commercial driver's license) and while Shirley was serving as

employees who were not members of the protected class were promoted. McDonnell Douglas, 411 U.S. at 802; Batey v. Stone, 24 F.3d 1330, 1334, n.11 (11th Cir. 1994)(citations omitted).

[18] When plaintiff refers to "the position" she appears to be analyzing her qualifications and other evidence in connection with the position of Supervisor of Transportation, which no longer exists as a separate job from the Supervisor of Maintenance. There is no dispute that if a separate position of Supervisor of Transportation presently existed, plaintiff would be better qualified than Shirley or any known candidates. See Shirley depo. at 54. However, since no such job vacancy existed the decision to select Shirley rather than plaintiff must be evaluated based on the actual vacancy in the position of Supervisor of Maintenance and Transportation. Plaintiff's claim that the combining of the two supervisory positions was discriminatory is dealt with separately.

16

Maintenance Supervisor people complained to the Board about him being elsewhere when he should be working.[19]  Id. at 33-35.

Plaintiff stated in her EEOC charge and the Complaint that she had more experience and education than Shirley.  Ex. 2 of Plaintiff's Sub.; Complaint at ¶ 19.  Yet the court finds no evidence in the record concerning either plaintiff's or Shirley's educational background.

According to defendants, because the job description of this position entails significant maintenance responsibilities, Shirley is more qualified than plaintiff.  As proof of Shirley's superior qualifications, defendants point to evidence that Shirley quickly reacted to correct an extensive safety problem created by poor maintenance while plaintiff asserts she was acting as the "de facto" Transportation Supervisor.  See Defendants' Brief at p.10.  However, plaintiff's version of the facts indicates the reaction was a joint effort by plaintiff and Shirley, with neither of them doing the "hands on" work.  See Ashley Statement; Case depo. at 68 (Ex. 1 of Defendants' Sub.).

Plaintiff asserts that she can ensure that the mechanics properly check the buses, without actually performing the mechanical work, just as Patterson had monitored the area in the past.  Defendants argue that obviously such supervision was not adequate due to the Transportation Department's poor bus status during the December 15, 1995 state inspection.  Additionally,

_____

[19]  Sue Gallahar testified that people had told her that Shirley's vehicle had been parked in front of businesses during working hours.  See Gallahar depo. at 26-28.

defendants assert that under Shirley's leadership there has been no evidence suggesting that the Transportation Department has experienced any additional maintenance problems. See Defendants' Brief at p.10. However, plaintiff has produced contrary evidence in the form of a statement by Henry Ashley indicating that in December of 1997 several buses were again grounded by the state inspector. See Ashley Statement. Based on the evidence presented, it appears that an issue of material fact remains concerning the adequacy of both plaintiff and Shirley in overseeing the necessary maintenance of the bus fleet to a level that complies with state requirements.

As defendants point out, it appears undisputed that Shirley had superior mechanical knowledge and skills. See Case depo. At 52-53 (Ex. 1 of Defendants' Sub.). However, due to plaintiff's challenge that the Vacancy Announcement for Supervisor of Maintenance and Transportation identified only maintenance duties in order to facilitate Shirley being selected and to prevent plaintiff from selection, the mere fact that Shirley possessed superior mechanical skills does not prevent plaintiff for making out a prima facie case.[20] Based on the foregoing, the court

---

[20] The School System argues that the new job description does include the supervisory duties of the Transportation Department by transferring almost verbatim the old duties of the Transportation Supervisor to the new joint position. After reviewing the evidence presented, it appears that the job description for the Supervisory of Maintenance and Transportation does include substantially all the duties previously allocated to the Transportation Supervisor. See Exs. 16 & 19 of Defendants' Sub. Yet, as the plaintiff points out the vacancy announcement posted for the job focuses on the mechanical and maintenance area. See Ex. 11 of Plaintiff's Sub.

18

concludes that the evidence presented by plaintiff is sufficient to set forth a prima facie case.

Second, after plaintiff has presented a prima facie case, the burden of production shifts to the defendants, requiring an articulation of some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted."  Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 950 (11th Cir. 1991), cert. denied, 502 U.S. 1058 (1992) (quoting Grigsby v. Reynolds Metals Co., 821 F.2d 590, 596 (11th Cir. 1987)).  In this case Kearley testified that his recommendation to combine the supervisory responsibility for the Maintenance and Transportation Departments was in order to achieve "a more streamlined, more efficient operation" and to save the System money.  See Kearley depo. at 23 (Ex.5 to Defendants' Sub.).  Kearley testified that he told the Board in 1993, two years before the challenged employment decision, that he had an interest in consolidating and downsizing departments in an effort to achieve a more efficient and cost effective organization.  Id.

According to Kearley, he based his recommendation of Shirley for the new joint position over plaintiff upon Shirley's previous supervisory experience, mechanical abilities and ability to perform in important situations.  See Kearley Affidavit (Ex. 4 of

19

Defendants' Sub.).  In the May 30, 1996 letter plaintiff's
counsel acknowledged that the reason given to plaintiff as to why
she was not appointed to the position as Supervisor of
Maintenance and Transportation was that someone was needed to
"get under the buses" and perform mechanical work.  See Ex. 12 of
Defendants' Sub.  Based on the foregoing defendants have
satisfied their burden of articulating a legitimate non-
discriminatory reason for the actions taken.

"At the summary judgment stage, once an employer
articulates a legitimate, nondiscriminatory reason for the
discharge, the burden shifts back to plaintiff to raise a genuine
factual question as to whether the stated reason is mere
pretext."  Cortin v. Southland Int'l Trucks, 25 F.3d 1545, 1550
(11th Cir. 1994); Hairston v. Gainesville Sun Publ. Co., 9 F.3d
913, 920 (11th Cir. 1993).  Plaintiff may prove that the
defendants intentionally discriminated against her either
"directly by persuading the court that a discriminatory reason
more likely motivated the employer or indirectly by showing that
the employer's proffered explanation is unworthy of credence."
Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir. 1989).

In Combs v. Plantation Patterns, 106 F.3d 1519 (11th Cir.
1997), the Eleventh Circuit clearly establishes the standard for
determining whether plaintiff has sufficiently met his or her
burden on the issue of pretext to survive summary judgment.  "[A]
plaintiff is entitled to survive summary judgment . . . if there
is sufficient evidence to demonstrate the existence of a genuine

issue of fact as to the truth of *each* of the employer's proffered reasons for its challenged decision." <u>Combs</u>, 106 F.3d at 1529 (emphasis added).   There is no question that presently the law of this circuit provides that in Title VII cases, "a jury question is created when a prima facie case is coupled with evidence sufficient to permit a reasonable factfinder to disbelieve an employer's proffered reasons for the challenged action."   <u>Id.</u> at 1534.

When deciding whether to grant a motion for summary judgment, the district court must view all evidence, making all reasonable inferences in favor of plaintiff, and determine whether plaintiff has cast sufficient doubt on each of defendants' proffered reasons to allow a reasonable factfinder to conclude that these proffered reasons were not the actual motivation for defendants' conduct.   <u>Combs</u>, 106 F.3d at 1529 & 1537.   "The district court must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" <u>Id.</u> at 1537(quoting <u>Sheridan v. E.I. DuPont De Nemours & Co.</u>, 100 F.3d 1061, 1071 (3d Cir. 1996)(en banc)).

When considering employment discrimination claims, this court does "not sit as a super-personnel department to reexamines an entity's business decisions.'" <u>Alphin v. Sears, Roebuck & Co.</u>, 940 F.2d 1497, 1501 (11th Cir. 1991); <u>see also</u>

21

Senigaur v. Beaumont Ind. School Dist., 760 F. Supp 1200, 1205
(E.D. Tex. 1991). Rather, the court's inquiry is limited to
determining if there is sufficient evidence to create a material
factual dispute as to whether the employer articulated an honest
explanation of its behavior with any judgment call based on a
good faith belief. Elrod v. Sears, Roebuck and Co., 939 F.2d
1466, 1470 (11th Cir. 1991). The employer can refuse to hire an
employee for a good reason, bad reason, a reason based on
erroneous facts, a reason based on poor judgment or for no reason
at all, as long as the actions are not based on discriminatory
purposes. Nix v. WLCY Radio/Rahall Comm., 738 F.2d 1181, 1187
(11th Cir. 1984).

The first non-discriminatory reason proffered by defendants
for selecting Shirley over plaintiff for the position of
Supervisor of Maintenance and Transportation and thereby paying
Shirley at a higher pay rate was Shirley's previous supervisory
experience. See Kearley Affidavit (Ex. 4 of Defendants' Sub.).
In an effort to discredit any reliance on supervisory experience,
plaintiff has presented evidence demonstrating that for many
years her job in the Transportation Department resulted in
opportunities for her to exercise supervisory responsibilities on
a daily basis. In fact many people in the School System,
including Kearley and the Board, were aware that she was
exercising supervisory responsibilities over the Transportation
Department during the time when Patterson was the Transportation
Supervisor, the time immediately following his death and after

22

Shirley was appointed Interim Transportation Supervisor.[21]   Even
Shirley admits that plaintiff was performing the job of
Transportation Supervisor, which necessarily includes supervisory
responsibilities, while Patterson was in the position and that he
informed Kearley that plaintiff was performing the job.   See
Shirley depo. at 48-49.   Although the June 29, 1995 letter from
Kearley clearly expresses displeasure with plaintiff taking on
supervisory duties, plaintiff has presented sufficient evidence
to create a factual dispute as to whether defendants could
reasonably believe that Shirley had more supervisory experience
than plaintiff.   See Ex. 17 of Defendants' Sub.

The second reason given by defendants for selecting Shirley
rather than plaintiff for the combined supervisory position was
Shirley's mechanical abilities.   There is no dispute that Shirley
possesses greater mechanical abilities than plaintiff.   Although
the court was not willing to accept the uncontradicted factual
evidence of Shirley's superior mechanical skills and experience
as dispositive in precluding a prima facie case, the evidence
supports a conclusion that the School System and Kearley could
legitimately rely on this additional mechanical experience both
as a reason in favor of consolidating supervision of the two
departments and as a basis for selecting Shirley rather than
plaintiff to serve in the supervisory role.

In reality, what defendants are doing is determining that
mechanical experience and skills were of greater importance to

---

[21]   See Ex. 8 of Defendants' Sub.; Miller depo. 10, 23-24.

23

the new position than experience and skills in performing the
non-maintenance transportation responsibilities, such as dealing
with routing, reports, discipline problems, and compliance with
applicable laws.  While it is clear from the evidence that
Kearley likely knew that his consolidation of the supervisory
positions and his emphasis on mechanical skills would preclude
plaintiff from serious consideration and favor Shirley, that
alone does not render this reason discriminatory.

     As an employer, the School System and its agent Kearley have
a right to realign supervisory authority, reprioritize desired
skills and abilities of applicants and combine jobs to best serve
its interests as long as such changes are not motivated by a
discriminatory animus.  The court concludes that plaintiff has
failed to present sufficient evidence to cast sufficient doubt on
the articulated reason that would allow a reasonable factfinder
to conclude that this proffered reason was not the actual
motivation for defendants' conduct and has also failed to present
sufficient additional evidence of a discriminatory animus in
relation to the combining of the supervisory positions and the
reliance of mechanical skills to preclude summary judgment.

     The final articulated reason provided by defendants was a
general phrase concerning Shirley's "ability to perform in
important situations."   See Kearley Affidavit (Ex. 4 of
Defendants' Sub.).  A weakness in this reason is its ambiguity
and general nature rendering it of limited assistance in
understanding the defendants' motivation.  However, defendants

offer an explanation to clarify how Shirley demonstrated this "ability to perform in important situations" with his involvement in working on the grounded buses to bring them in compliance with state requirements in December of 1995.

Plaintiff attempts to discredit defendants' assertion that this episode provided a reason to recommend Shirley for the supervisory position rather than plaintiff with evidence questioning the degree of involvement by Shirley in this process. See footnote 5, supra. However, even when construing the facts in the light most favorable to plaintiff, regardless of whether or not Shirley was more instrumental that plaintiff in bringing about these repairs, defendants assert that they believed Shirley was responsible for ensuring that these repairs occurred and plaintiff has failed to present any evidence disputing that defendants believed that these efforts were fully attributable to Shirley and not plaintiff. See Ex.9 of Defendants' Sub. Even if defendants' beliefs concerning Shirley's exemplary efforts were wrong, these beliefs can still serve as a legitimate non-discriminatory reason for promoting him, absent some evidence casting sufficient doubt that defendants could reasonably hold such a belief. Nix, 738 F. 2d at 1187 (11th Cir. 1984).

Assuming that Shirley's true ability to handle mechanical upkeep and prevent buses being grounded is put at issue by Ashley's statement that additional buses were grounded in December of 1997, this information would be hindsight and was not available at the time the defendants relied on Shirley's

abilities in this area in selecting him over plaintiff. Even assuming that Shirley was not in fact performing well in providing necessary maintenance for the bus fleet, the proferred reason is not pretextual or unworthy of belief unless plaintiff can present evidence demonstrating that defendants could not reasonably believe that Shirley was performing this responsibility well. Plaintiff has failed to present evidence to support a sufficient doubt by the factfinder that defendants could rely on what the Board and the Superintendent, Kearley, understood to be Shirley's exemplary efforts in relation to the December 1995 bus episode.

Based on the foregoing, plaintiff has failed to create an issue of fact as to two of the three reasons articulated by defendants as the basis for selecting Shirley rather than plaintiff for the position of Supervisor of Maintenance and Transportation. Additionally, as to the claim that the decision to combine the supervisory responsibilities of the Maintenance and Transportation Departments into one job was discriminatory toward plaintiff, defendants have articulated reasons of efficiency and streamlining departments and plaintiff has failed to demonstrate pretext or sufficient evidence to cast doubt on these proferred reasons. The only argument by plaintiff to discredit Kearley's asserted motivation of efficiency is the fact that although Kearley testifies now that he had these plans for several years before he combined the jobs there is no evidence that he mentioned that to the Board at the time the change was

26

made. This argument does not truly question the motivation, except to criticize Kearley for not being more explicit in his proposal or to criticize the thoroughness of the taking of minutes of Board meetings.

Plaintiff points to statements by various individuals that she was not promoted to the position of Supervisor of Maintenance and Transportation because she was a woman as additional evidence of discriminatory intent. The court finds the personal opinions of fellow employees and a Board member that plaintiff should have been given the position of Transportation Supervisor and Tucker's opinion that plaintiff was denied the promotion because she is a woman to be irrelevant. See Tucker depo. at 14-15; Bates depo. at 11-12; Scott depo. at 16; Gallahar depo. 26-28; Turner depo. at 14-15; Case depo. at 33 (Ex. 5 of Plaintiff's Sub.); see also footnote 16, supra. These individuals identify this as their own personal opinion and can point to no objective evidence other than plaintiff's experience in the area. Likewise, even Shirley's purported statement that plaintiff would have gotten the position if she had been a man does not provide evidence of discriminatory intent, absent some evidence of on what Shirley based his opinion. See Turner depo. at 14, 16.

### 3. Discriminatory Pay Claim Under Title VII and § 1983

As with plaintiff's other Title VII and § 1983 claims, she must prove that the differences in pay between plaintiff and Patterson and/or plaintiff and Shirley were motivated by defendants' intent to discriminate against her based on sex.

27

Mulhall v. Advance Security, Inc., 19 F.3d 586, 597 (11th Cir. 1994). All the evidence in relation to any discriminatory motive has been analyzed above and determined to be insufficient to create a genuine issue. Similarly, when applying the evidence submitted by plaintiff to her discriminatory pay claims which include "intent" as an element, the evidence likewise fails to prevent summary judgment in favor of defendants as to those claims.

For the reasons set forth in this section and the preceding section, the court concludes that defendants Kearley and the School System are entitled to judgment as a matter of law in their favors on plaintiff's claims for sex discrimination under Title VII against the School System and § 1983 against Kearley,[22] and the defendants' motion for summary judgment is due to be granted as to these claims. Plaintiff's motion for summary judgment is due to be denied as to all her Title VII and § 1983 sex discrimination claims.

### 4. Plaintiff's Retaliation Claim

In relation to plaintiff's retaliation claim in Count III, the complaint fails to provide any explanation as to the exact factual or legal basis for her retaliation claim. In her April 10, 1998 brief plaintiff addresses her retaliation claim as only a Title VII claim, therefore despite the inartful pleading in the

---

[22] Likewise, this analysis also would alternatively entitle the School System to judgment in its favor as a matter of law on plaintiff's § 1983 claim.

complaint, the court will analyze plaintiff's claim as retaliation under Title VII.[23]

Plaintiff appears to be relying mainly on events relating to the interview process. In Count I of the Complaint, plaintiff asserts that as a result of her complaints she was "subjected to belittling and derogatory comments" and defendants "intentionally made it difficult for plaintiff to interview for the position in question, calling her less than fifteen (15) minutes before the scheduled interview was to occur." See Complaint at ¶ 24. Then in her brief on April 10, 1998, plaintiff additionally alleges that defendants retaliated against her by: (1) Kearley's attempt to intimidate her during the job interview; (2) his decision not to inform the Board of plaintiff's past work as the Transportation Supervisor; (3) the decision not to present her as a viable candidate to the Board for consideration; and (4) having her bank account frozen. See Plaintiff's Brief at p.30.

_____

[23] See footnote 3, supra. Count III of the complaint makes reference only to the Equal Pay Act and the court originally assumed plaintiff was relying on 29 U.S.C. § 215(a)(3) of the Fair Labor Standards Act. EEOC v. White & Sons Enterp., 881 F.2d 1006, 1011-12 (11th Cir. 1989). Defendants assert in their brief that there is no retaliation claim under the Equal Pay Act. Although there is some case law in support of each side's position on the existence, vel non, of a retaliation claim under the Equal Pay Act, due to plaintiff's treatment of her claim as under Title VII and case law treating Section 215(a)(3) as applying the same elements as a Title VII retaliation claim, 42 U.S.C. § 2000e-3(a), the court will speak of plaintiff's retaliation claim in terms of "Title VII." See Wu v. Thomas, 863 F.2d 1543, 1546, n.5 (11th Cir. 1989)(treating a similar claim as a Title VII claim); Chisholm v. Foothill Capital Corp., 940 F. Supp. 1273, 1283 (N.D. Ill. 1996).

In order for plaintiff to present a prima facie case of retaliation, plaintiff must show: (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that there is some casual relationship between the two events. Meeks v. Computer Assoc., 15 F.3d 1013, 1021 (11th Cir. 1994). The court sets forth below its understanding of the poorly developed factual assertions and applies the essential elements to these assertions.

As to the short notice of less than fifteen minutes prior to the interview, Shirley testified that he too received only 15 to 20 minutes notice prior to his interview. See Shirley depo. At 42. Kearley states that he did not schedule a specific interview time for plaintiff but merely instructed his secretary to have plaintiff come to talk with him "at her earliest convenience." See Kearley Affidavit (Ex. 4 of Defendants' Sub.). Plaintiff has failed to present any evidence to create any factual dispute as to how she was treated any differently in relation to the notice of the interview due to her prior complaints and further failed to present evidence of any adverse employment action that can be shown to be arguably caused by the short notice prior to the interview.

According to plaintiff during her interview Kearley brought up the fact that she had consulted an attorney and filed a charge of discrimination with the EEOC alleging sex discrimination.[24]

_____

[24] In her brief plaintiff uses the term "ridicule" to describe Kearley's discussion of her consulting an attorney and filing an EEOC charge. According to her complaint, plaintiff

30

See Case depo. at 81-84 (Ex. 1 of Plaintiff's Sub.). Plaintiff testified that during the interview Kearley had the EEOC charge and took it out to try and intimidate her.  Id. at 83. Plaintiff also testified that during her interview Kearley told her that "some of the Board members also had contacted him and told him that the school system did not need anyone like [plaintiff] working for it."  See Case depo. at 82 (Ex. 1 of Plaintiff's Sub.).   Plaintiff understood the term "someone like her" to relate to her filing of her EEOC charge.  Id.

The court questions the accuracy of plaintiff's account of the interview based on the fact that plaintiff testified that this interview occurred in May of 1996 and according to the undisputed facts the EEOC charge was not filed until (at the earliest) June 10, 1996.[25] Id. at 84; Ex. 2 of Plaintiff's Sub. However, construing all the evidence in the light most favorable to plaintiff, there is some evidence of complaints by plaintiff about her performance of the Transportation Supervisor's work, not being paid enough, and that the job posting favored Shirley. Yet, it is unclear as to how explicitly plaintiff attributed

---

asserts that because she complained about the discrimination she was "subjected to belittling and derogatory comments."  See Complaint at ¶ 5.   However, nothing in the evidence submitted supports plaintiff's characterization of the discussion as "ridicule" "belittling" or "derogatory." Defendant Kearley disputes this characterization of the interview.  See Kearley Affidavit (Ex. 2 of Defendants' April 2 Sub.).

[25]   Defendants assert that based on the Notice of the Charge in the EEOC file dated July 31, 1996, Kearley and the Board had no notice of the filing of the charge until after Shirley was approved for the promotion.  See Kearley Affidavit & EEOC file in April 2, 1998 filing.

31

these problems to discrimination based on sex prior to the filing
of the EEOC charge.  Additionally, plaintiff has failed to
present evidence linking this "intimidating behavior" with any
adverse employment action or identifying any specific adverse
employment action which resulted from the interview incident,
other than not receiving the promotion.  If plaintiff's only
arguably adverse employment action that resulted from the alleged
retaliatory conduct was not being selected as the Supervisor of
Maintenance and Transportation, then defendants have articulated
reasons for the promotion decision as discussed above and
plaintiff has failed to rebut those reasons in a manner showing
pretext for retaliation, just as with the sex discrimination
claim.  Thus, for the reasons set forth above plaintiff has no
claim of retaliation based on the adverse effect of not receiving
the promotion.

As to plaintiff's assertions of retaliation based on what
Kearley "did not" tell the Board, the defendant has presented an
Enclosure given to the Board that mentions plaintiff as an
applicant, but provides no other information about plaintiff.
See Ex. 6 of Defendants' Sub.  Because the same considerations
are involved in the determination of what information to present
to the Board in the recommendation and the decision by Kearley to
recommend Shirley over plaintiff, the court relies on the
analysis set forth above involving the underlying Title VII sex
discrimination claim.

32

Finally, in the final brief plaintiff throws in some mention of defendants freezing plaintiff's bank account.  There is no evidence in the record showing any such action and plaintiff has failed to sufficiently set forth any retaliation claim premised on that basis.

For the reasons set forth above, the court concludes that the motion of the School System for summary judgment is due to be granted as to plaintiff's retaliation claims.

## C.  **Analysis of Plaintiff's Equal Pay Act Claim**

In relation to her Equal Pay Act claim, plaintiff asserts that she is entitled to pay equal to that of Patterson and Shirley when serving in their supervisory capacity over the Transportation Department because she performed all the duties of the Transportation Supervisor for seven years.  According to plaintiff she began assuming supervisory responsibilities soon after she was hired in August of 1985, then assumed basically all responsibilities in the Transportation Department during Patterson's remaining tenure and when Shirley was serving both as Interim Supervisor of Transportation and as Supervisor of the Transportation and Maintenance Departments.  See Case depo. at 134.  Plaintiff asserts that shortly after being hired she received her school bus certification and immediately began performing supervisory duties in Patterson's job description, such as training and evaluating drivers.  Id. at 134.

33

Kearley testified that from 1993 until Patterson's death, Patterson was never sick to the point where he could not carry out his duties prior to his death. See Kearley depo. at 25. Shirley acknowledged that plaintiff was doing the bulk of the work in the Transportation Department, including Patterson's job, for the last five years before his death. See Shirley depo. at 48-49. According to Shirley, he told Kearley that plaintiff was doing Patterson's job. Id. at 49-50. In fact, Shirley stated that it was common knowledge that plaintiff was doing Patterson's job. Id. at 50.

Plaintiff asserts that once Shirley became Interim Transportation Supervisor he did not take on any duties within the job description of the Transportation Supervisor. Id. at 136. Kearley disputes plaintiff's statement and testified that to the best of his knowledge Shirley did take on the responsibilities and duties previously carried out by Patterson once he was named as Interim Transportation Supervisor. See Kearley depo. at 26. Plaintiff presented Board member Bonnie Miller's testimony that plaintiff complained to Miller that she felt that she was doing more than her share as far as work schedule and responsibility in the Transportation Department. See Miller depo. at 10. Miller testified that after Shirley was appointed as the Interim Supervisor of Transportation the Board was notified informally by members of the public that plaintiff was performing the duties of the Transportation Supervisor. Id. at 23-24.

34

Furthermore, plaintiff asserts that when Shirley became Supervisor of Maintenance and Transportation he failed to take on any of the duties previously included in the prior description of the Transportation Supervisor and then as part of Shirley's new job description. Id. at 137. According to plaintiff she relinquished none of her pervious duties in the Transportation Department to Shirley. Id. Ken Turner, a School System mechanic, testified that after Shirley was named Interim Supervisor of Transportation and then Supervisor of Maintenance and Transportation plaintiff continued to perform all the duties associated with the Transportation Department and Shirley assumed none of the duties previously performed by plaintiff. See Turner depo. at 10, 17.

Plaintiff's position is supported by Rita Nabors's testimony that when she substituted in the Transportation Department it was clear to her that plaintiff ran the department, even though Shirley was the Supervisor. See Nabors depo. at 8-9, 17-21. Several School System employees testified that in their dealings with the Transportation Department plaintiff acted as the "head-honcho" or ran the department. See Tucker depo. at 9; Scott depo. at 11-12, 19; Gallahar depo. at 14; Turner depo. at 7-8. According to Tucker, when he would talk to Shirley or Patterson they would just direct him to call plaintiff. Id. at 9,11,13.

In order to make out a prima facie case under the Equal Pay Act, the plaintiff must show: (1) that she receives lower pay than a male co-employee; and (2) that she performs work that is

35

substantially equal in skill, effort and responsibility under similar working conditions.[26] <u>Mulhall v. Advanced Security, Inc.</u>, 19 F.3d 586 (11th Cir. 1994); <u>Waters v. Turner, Wood & Smith Insurance Agency, Inc.</u>, 874 F.2d 797 (11th Cir. 1989). The Eleventh Circuit has recognized that "[t]he standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." <u>Waters</u>, 874 F.2d at 799.

"The restrictions in the [Equal Pay] Act were meant to apply only to jobs that are substantially identical or equal." <u>Brennan v. City Stores, Inc.</u>, 479 F.2d 235, 238 (5th Cir. 1973). "Job titles are a factor for consideration, but are not dispositive." <u>Mulhall v. Advanced Security, Inc.</u>, 19 F.3d 586, 592 (11th Cir. 1994). The actual duties that the plaintiff, Patterson and Shirley were called on to perform is the controlling factor under the Equal Pay Act. <u>Waters v. Turner, Wood & Smith Insurance Agency, Inc.</u>, 874 F.2d 797, 799 (11th Cir. 1989). Unlike a claim for discriminatory pay under Title VII, plaintiff's Equal Pay Act claim requires no proof of a discriminatory intent. <u>Mulhall</u>, 19 F.3d at 597.

There appears to be no dispute that plaintiff was paid less than both Patterson and Shirley. <u>See</u> discussion on pages 6-7,

---

[26]     The Equal Pay Act provides that "[n]o employer. . . shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays to employees of the opposite sex in such establishment for equal work on jobs the performance of which require equal skill, effort, and responsibility, and which are performed under similar working conditions. . ." 29 U.S.C. § 206(d)(1).

supra.   The central disputed matter in this case is whether
plaintiff's performance of job duties under the area of the
Transportation Supervisor's responsibility renders her job equal
to the positions held by Patterson and/or Shirley.

The School System asserts that the duties that plaintiff
states were part of the supervisor's responsibility were actually
encompassed in plaintiff's job duties as Maintenance and
Transportation Secretary and Assistant to Shirley.   After
reviewing the job description of Maintenance and Transportation
Secretary, the court agrees with defendants that many of the
duties that plaintiff asserts are supervisory responsibilities
she performed that should be handled by the Transportation
Supervisor are actually within her job description, such as:
completing payroll records; arranging substitutes for custodial
staff and bus drivers; notifying schools of route or schedule
changes; maintaining records on bus drivers, maintenance work
performed and billing of expenses for field trips; attending
appropriate workshops to stay abreast of state and local
transportation laws; and completing state and local
transportation reports.   See Ex. 18 to Defendants' Sub.   However,
several areas including training, scheduling and routing
responsibilities were not within plaintiff's original job
description.

When reviewing the job description for Transportation
Supervisor there seems to be few responsibilities that plaintiff
does not allege she performed herself.   See Ex. 16 of Defendants'

Sub. No party has submitted a job description for the Assistant position plaintiff held from August 1996 to November of 1997 to allow comparison with the Supervisor of Transportation and Maintenance job description.

When analyzing under the Equal Pay Act whether two jobs have equal responsibility in performance, the regulations describe responsibility as "concerned with the degree of accountability required in the performance of the job." 29 C.F.R. § 1620.17(a); Krenik v. County of Le Sueur, 47 F.3d 953, 960 (8th Cir. 1995). Both case law and the regulations recognize that additional supervisory responsibilities generally provide a basis for a pay differential. 29 C.F.R. § 1620.17; Krenik v. County of Le Sueur, 47 F.3d at 960-61; Riordan v. Kempiners, 831 F.2d 690, 699 (7th Cir. 1987)(Generally "the work of a supervisor and of the workers [he] supervises is necessarily different."). In most cases, the simple addition of ultimate accountability placed on a supervisor would likely prevent a supervisor's job from being substantially equal to a worker under his supervision in the organizational framework.

However, the addition of supervisory duties are not always conclusive in determining substantial equality of jobs. Courts have recognized that for supervisory duties to preclude equality between jobs, the duties must not be "insubstantial or minor" but rather "an appreciable variation in skill, effort of responsibility between otherwise comparable job work activities." See Laffey v. Northwest Airlines, Inc., 740 F.2d 1071, 1083 (D.C.

38

Cir. 1984)(citing a list of similar rulings by other courts in
Thompson v. Sawyer, 678 F.2d 257, 272, n.12 (D.C. Cir. 1982)).
Based on the evidence in this case plaintiff has produced a body
of evidence supporting her assertion that she performed all or
substantially all the duties assigned to Patterson and Shirley,
prior to Shirley being named Supervisor of Maintenance and
Transportation.[27]  While defendants have submitted evidence
disputing that plaintiff performed all such duties, defendants
failed to present any evidence to demonstrate any substantial
supervisory responsibilities, ultimate decision making
responsibility and accountability assigned to Patterson and in
the interim to Shirley, that were not "de facto" placed on
plaintiff.

Based on the foregoing both the plaintiff's and defendant
Talladega City School System's motion for summary judgment in
relation to the Equal Pay Act claims will be denied due to the
continuing existence of material issues of fact.

The court notes that under the Equal Pay Act plaintiff's
recovery would be limited by 29 U.S.C. § 255(a).  Absent a
showing of a willful violation, it appears that if plaintiff

---

[27]  Based on the arguments by the parties and a comparison
of the Transportation Supervisor's job description to the new
Supervisor of Maintenance and Transportation's job description,
it appears that the new supervisory job involves a number of
additional responsibilities, skills and duties that plaintiff
does not allege to perform.  See Exs. 16 & 19 of Defendants' Sub.
However, due to the absence of more specific evidence in this
area the court is unwilling at this time to enter judgment as a
matter of law that Shirley's position as of July 1996 and
plaintiff's position as his Assistant were not substantially
equal under the Equal Pay Act at this time.

prevailed she would be entitled to back wages from March 27, 1995 until July 1, 1996 or, at best, until November 30, 1997, when she left employment with the School System.[28]  See 29 U.S.C. § 255; Hodgson v. Behrens Drug Co., 475 F.2d 1041, 1050 (5th Cir. 1973); Miller v. Kansas Power & Light Co., 585 F. Supp. 1509 (D. Kan. 1984).  If plaintiff were to present evidence sufficient to prove a willful violation, then plaintiff could also recover back wages for the period March 27, 1994 to March 27, 1995 and possibly liquidated damages.

In summary, defendants' motion for summary judgment will be granted in relation to all claims stated against the School System in Counts I, III and IV and the claims stated against Kearley under Count IV.  Plaintiff's motion for partial summary judgment is due to be denied.  A separate order will be entered.

After reviewing all the evidence presented in relation to all proposed claims, the court concludes that the relevant factors weight in favor of certifying the ruling on all "intent" claims under § 1983 and Title VII as there is no just reason for delaying the entry of final judgment as to those claims. Additionally, because the court's decision would eliminate all claims against Kearley, individually, certification is

---

[28]  Based on the evidence presently before the court it appears somewhat questionable that plaintiff could prevail on her Equal Pay Act claim for the period from July 1, 1996 until November 30, 1997 due to the changes in the supervisory position, as explained above.  Also, in the court's opinion, plaintiff would need additional evidence in order to prove a willful violation.  However, if this case goes to trial the jury will be the fact finder who determines if the School System's actions were willful.

appropriate in that all liability on Kearley's behalf has been
adjudicated.  While the facts surrounding the selection process
and the decision concerning the promotion to Superintendent of
Maintenance and Transportation ran as common threads through
plaintiff's retaliation and sex discrimination claims under Title
VII and his sex discrimination claim under § 1983, the remaining
Equal Pay Act claim does not rely on these facts, but rather a
close comparison of work duties, actual work performed and
responsibilities between plaintiff and Shirley and plaintiff and
Patterson.  There is no remaining claim that requires the court
to analyze the motivation of defendants' in the promotion
process.  Based on the determination by this court that there is
no just reason to delay the entry of final judgment, the court
will direct the clerk to enter the accompanying order as a final
judgment pursuant to Fed. R. Civ. P. 54(b).

DONE this _20th_ day of May, 1998.


SENIOR UNITED STATES DISTRICT JUDGE

41